EVANGELICAL LUTHERAN JOINT SYNOD, Appellant, v.
FLAVIN, Respondent

(35 N. W.2d 293.)

(File No. 8999. Opinion filed December 28, 1948.)

Rehearing Denied Feb. 9, 1949.

H. R. Hanley, of Rapid City, for Plaintiff and Appellant.

George E. Flavin and Bellamy & Eastman, all of Rapid City, for Defendant and Respondent.

SMITH, J. In its complaint plaintiff prays that defendant's contract to sell and convey certain vacant lots located in Rapid City to plaintiff be specifically enforced. By his answer defendant sought a judgment of strict fore-

closure of that contract. The trial court entered findings, conclusions and judgment for defendant foreclosing the contract and plaintiff has appealed.

From the brief of the defendant vendor we quote as follows: "We must bear in mind that in the case at bar neither of the parties are contending that their contract had been terminated or that it is no longer in existence. Both the plaintiff and the defendant here as well as in the court below, insist that their claimed rights come from an existing valid contract and each is asking enforcement of that contract. The sole and only issue in the case on trial was 'How much is due from the plaintiff to the defendant under such contract.' And even this was narrowed down through the concession made by the parties that the unpaid principal due was $2,700.00, so that only the question of 'interest' remained for decision. It is the only question before this court on appeal. If no interest was due from Appellant to Respondent then clearly the trial court was wrong in entering judgment for defendant, and he should be reversed." We have concluded that the record does not sustain the finding of the court that interest from September 1st, 1945, was due and owing from plaintiff to the defendant.

The contract acknowledged receipt of $1,000 on the purchase price as of its date, viz., June 11, 1945, and provided for the payment of the full balance of $2,700 on the 1st day of September, A. D., 1945. The pertinent provisions to the question we are considering read as follows: "The Party of the First Part does agree that upon payment of the full purchase price he will convey said property by good and sufficient warranty deed of conveyance, and will furnish the Party of the Second Part a proper Abstract of Title showing title to be good and merchantable, free and clear of all liens and encumbrances save and except such special assessments liens if any, the proceedings and resolutions for which may be adopted by the City of Rapid City subsequent to the date of this agreement, Party of the First Part to pay taxes assessed and levied for the year 1944 and the Party of the Second Part to assume and pay taxes levied and assessed for the year 1945 and subsequent years.

"It is further agreed that payment shall be made and Deed and Abstract delivered at the First National Bank of Rapid City, South Dakota, and that if the Party of the Second Part shall fail to pay or deposit in said Bank the balance of said purchase price on or before the first day of September 1945, then such balance of such purchase price shall bear interest at the rate of Six Percent per annum from September 1st 1945, and until fully paid." The lots produce no income and possession thereof remains in the vendor.

■ The record reveals the details of a series of conferences and telephone conversations between the vendor and representatives of the church during a period from the 18th day of August 1945 until the last part of January 1947. We do not feel justified in setting forth the evidence. After a most careful study of the record we have concluded that two inferences of fact are inescapable: First. From the 18th day of August 1945 the vendor has known that the church has had in its hands $2,700 it was anxious and eager to pay to him in exchange for the title he had contracted to convey and that it desired an opportunity to examine an abstract of his title. Second. That from the date fixed for performance delay in completing the exchange for which the parties had contracted was caused by the wilful failure of the vendor to procure an abstract of his title and thus place himself in readiness to perform his agreement. In these circumstances was the purchaser church obligated for interest from September 1st, 1945? As we have indicated, we think not.

This question, and perhaps this appeal, would not have arisen if the church had deposited its $2,700 in the First National Bank on or before the 1st day of September, A. D., 1945. However, even when the vendor commanded, "You will put that money in The First National Bank before you and I go any further with this deal," the church did not choose to comply, and we are of the opinion that it was not required to make such a deposit until the vendor was ready and willing to make a concurrent deposit of his abstract and deed. The promises of this contract are dependent. Ink v.

Rohrig, 23 S. D. 548, 122 N. W. 594; Benton v. Davison, 51 S. D. 91, 212 N. W. 500; Rapp v. Petrik, 61 S. D. 426, 249 N. W. 736. Neither party to such a contract can demand that the other's performance shall come first. Williston, Contracts, Rev. Ed., § 830. And a party is not qualified to demand performance of the other without placing himself in readiness to render his concurrent performance. Benton v. Davison, supra. Indisputably the vendor was not ready to perform because he had not procured an abstract of his title, and moreover, he had informed the church that his papers were not ready. In fact, although after repeated conferences and telephone conversations during which he stated further time was required in which to procure an abstract, and he had written in a letter of February 6, 1946, "Referring to your letter of January 31st I have ordered the abstract and hope to have it delivered to you very shortly," his testimony indicates that no firm order for an abstract had been placed until after July 1946. In his testimony he states "I don't know what happened to the abstract. Unless you order them at the office they sometimes slip by, and I may have told Milne not to be in any hurry about it. I know I repeated the abstract order after I was informed by Mr. —your gentleman—that the money had been put in the bank." He had been informed that the money had been placed in the bank after July 1946. It is noteworthy that the abstractor's certificate is dated November 21, 1946 and that the abstract was actually handed to counsel for the church for examination in early December 1946. Nevertheless, the vendor argues "The contract itself provided that interest should be paid if the full amount of the purchase price was not paid, or deposited in the named Bank, by September 1, 1945. No such payment or deposit was made. Clearly, then, interest was payable unless that provision of the contract was waived by the parties."

We are not persuaded. After considering all of the circumstances, including the nature of the property and its possession by the vendor, we have concluded the parties by this contract did not intend to invest the vendor with the right to exact interest for a period of delay occasioned

by his own wilful conduct. The cases involving similar facts are few, but they support our conclusion.

The original and leading case is that of DeVisme v. DeVisme, 1 Macn. & G. 336, 41 Eng.Reprint, 1295. The provision for interest under consideration reads "but that if the purchaser of any of the lots should fail in making such payments at the time, and in manner before mentioned, then and in such case, from whatever cause the delay might have arisen, he should pay interest at the rate of 5 per cent per annum on the balance of his purchase-money, * * *" In rendering decision the Lord Chancellor said, "I do not, however, find, in any case, a contract that a purchaser is to pay interest from a day certain, although he is prevented from performing his part of the contract by the acts of the vendor;—no purchaser would make such an agreement as that. I have no doubt the truth is, that in all these cases of provision for unforseen events, the words 'from any cause whatever' are intended to include only that which is not expressly provided for by the contract. The question then is, whether a vendor, who does not deliver his abstract showing a good title, until a period long after the time specified, and thus, by not performing his part of the contract, prevents the purchaser from having the benefit of his purchase until a later period, is to have the benefit of the contract against the purchaser? Nothing could be more unjust than so to hold, or to say, that a purchaser, having contracted to pay 5 per cent. upon his purchase-money * * * is liable to pay such interest from the time contracted for, though the vendor has not performed his part of the contract by delivering the abstract so as to enable the purchaser to have the benefit of the contract."

In Wilcox v. Commonwealth Realty & Trust Co., 248 Mich. 527, 227 N. W. 678, 681, 75 A. L. R. 307, the contract provided for interest until the principal sum shall be fully paid. Nevertheless the court held, "The delay after July 1, 1928, was due to willful default of defendant, and it is not entitled to interest after that date."

The contract did not provide that time of performance should be of the essence. In seeking to place the

purchaser in default (cf. Boekelheide v. Snyder, 71 S. D. 470, 26 N. W.2d 74) and to gain a cause of action in strict foreclosure under SDC 37.31, the vendor in January 1947 tendered performance and deposited his deed and abstract in the First National Bank to be delivered to the church upon payment of $2,700 with interest at 6 per cent per annum from September 1945. That this demand was excessive and rendered the tender ineffective, and that the finding of the court that there is due from plaintiff under the contract $2,700 with interest from September 1, 1945, is not supported by the evidence follows from our holding supra with reference to interest, and, as conceded by the defendant, it also follows that the judgment of strict foreclosure must be reversed.

The judgment of the trial court is reversed.

ROBERTS, P. J., and RUDOLPH and HAYES, JJ., concur.

SICKEL, J., concurs in the result.